UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GC AMERICA INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KEVIN HOOD, LAW OFFICES OF GOLDBERG & GOLDBERG | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, GC AMERICA INC, ("Plaintiff"), by and through its attorneys, KOLB CLARE & ARNOLD PC, submits this Complaint against Defendants, KEVIN HOOD ("Hood") and THE LAW OFFICE OF GOLDBERG & GOLDBERG ("Goldberg") as follows:

**NATURE OF ACTION**

1. This is an action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(3), for equitable relief to remedy Hood's and Goldberg's violations of the terms of a certain employee health benefit plan ("the Plan") sponsored by GC America Inc. Plaintiff seeks equitable relief in the form of a declaration of Plaintiffs' rights, constructive trust and/or equitable lien upon amounts held by any Defendants, that belong to the Plan, in accordance with ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## JURISDICTION

2. This Court has original and exclusive jurisdiction over Plaintiff's claims for relief under this count pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

## VENUE

3. Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), of ERISA because on information and belief the at least some of the Defendants reside in this judicial district and because, on information and belief, some of the funds at issue are being held in this judicial district.

## PARTIES

4. Plaintiff sponsors and is a fiduciary of the GC America Inc. Group Benefit Plan ("the Plan"). The Plan is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. §1002(1).

5. At all relevant times, Kevin Hood was a plan participant/plan beneficiary in the Plan. Goldberg was a law firm retained by Hood to represent him in a claim for personal injuries he sustained that were caused by negligent third parties and Goldberg did represent Hood for all or some of such claims.

## FACTUAL BACKGROUND

6. The Plan provides health benefits to eligible GC America Inc. employees and their eligible spouses and dependents. The Plan is self-funded by GC America Inc. The terms of the Plan are contained in the the Plan's Summary Plan Description ("SPD") and have been amended from time to time as appropriate over the relevant time period. True and correct copies of the

relevant excerpts from such documents are attached as Exhibit A to this Complaint.

7. As of April 7, 2009 and prior thereto, Kevin Hood was enrolled in the Plan as a beneficiary/dependent.

8. The summary plan description for the Plan contained the terms of the Plan to which both Plaintiffs and Hood were obligated.

9. The summary plan description states, in pertinent part, the following at p. 63-64:

> "Covered Persons, are being provided benefits pursuant to this group health Plan. This Plan is designed to cover You and Your Dependent(s) with health benefits. This Plan is not intended to serve as a supplement to, or replacement for, any payments or benefits You or Your Dependent(s) have or may recover from any Other Party when charges are Incurred as the result of an Accident, Illness, Injury or other medical condition caused by an act or omission of said Other Party. Benefits under this Plan are excluded subject to the terms and conditions of this Subrogation, Reimbursement and Offset Provision anytime there is an Other Party who is liable or responsible (legally or voluntarily) to make payments in relation to the Accident, Illness or Injury.
>
> For purposes of this section, **Other Party** is defined to include, but is not limited to, the following:
> ☐ The party or parties that caused the Accident, Illness, Injury or other medical condition;
> ☐ The insurer or other indemnifier of the party or parties who caused the Accident, Illness, Injury or other medical condition;
> ☐ The Covered Person's own insurer including, but not limited to, uninsured motorist, underinsured motorist, medical payment, no-fault insurers or home-owner's insurance;
> ☐ A worker's compensation or school insurer;
> ☐ Any other person, entity, policy or plan that is liable or legally responsible to make payments in relation to the Accident, Illness, Injury or other medical condition.
>
> For purposes of this section, **Recovery** is defined to include, but is not limited to, any amount paid or payable by an Other Party through a settlement, judgment, mediation, arbitration, or other means in connection with an Accident, Injury or Illness.
>
> This section is applicable when a Covered Person and/or his or her Dependent(s) have Incurred charges for an Accident, Illness, Injury or other medical condition in connection with an act or omission of any Other Party. If the Covered Person and/or his or her Dependent(s) have the legal right to seek a Recovery from such Other Party, benefits will only be payable if You and Your Dependents agree to the following:
>
> ☐ That the Plan is subrogated to all rights the Covered Person may have, and You and Your Dependents acknowledge that the Plan will have a first priority lien and right of

recovery, on any Recovery received from any Other Party as a result of an Accident, Illness, Injury or other medical condition caused by an act or omission of the Other Party. Any Covered Person accepting benefits from the Plan assigns from any such Recovery an amount equal to the benefits paid by the Plan. A Covered Person further agrees that notice of this assignment presented to the Covered Person's attorney and/or insurance company or Other Party responsible for payment of the damages is binding on the party receiving such notice.

☐ That the Covered Person, or their legal representative, shall notify the Plan of any claim or potential claim the Covered Person and/or their Dependent(s) have against any Other Party within 30 days of the act which gives rise to such claim. That, if requested, the Covered Person or his or her Dependent(s) or legal representative shall supply the Plan with any information that is reasonably necessary to protect the Plan's subrogation interests.

☐ If an act or omission of an Other Party causing an Accident, Illness or Injury results in payments being made under the Plan, that neither the Covered Person nor their Dependent(s) do anything that would prejudice the Plan's rights to recover payments.

☐ That, if requested, the Covered Person shall execute documents (including a lien agreement) and deliver instruments and papers and do whatever else is necessary to protect the Plan's rights. Such documents may require the Covered Person to direct their attorney (and other representatives) in writing to retain separately from any Recovery that the attorney or representative receive on the Covered Person's behalf an amount of money sufficient to reimburse the Plan as required by such agreement and to pay such money to the Plan. Failure or refusal to execute such documents or agreements or to furnish information does not preclude the Plan from exercising its right to Subrogation or obtaining full reimbursement. In the event the Covered Person does not sign or refuses to sign such an agreement, the Plan has no obligation to make any payment for any treatment required as a result of the act or omission of any Other Party, such agreement is expressly incorporated in this Plan and will be provided to the Covered Person at anytime upon request.

☐ The Plan is also granted a right of reimbursement from the proceeds of any Recovery obtained or that may be obtained by the Covered Person. This right of reimbursement runs concurrent with and is not necessarily exclusive of the Plan's subrogation and lien rights described above. A Covered Person shall promptly convey to the Plan any amounts received from any Recovery for the reasonable value of the medical benefits advanced by the Plan or provided by the Plan to the Covered Person.

☐ In the event that the Covered Person fails to cooperate with the Plan or fails to comply with the terms of this provision, the Plan may offset or otherwise reduce present or future benefits otherwise payable to the Covered Person or their Spouse or Dependent under the terms of the Plan. Moreover, in the event that a Covered Person fails to cooperate with the Plan, the Covered Person shall be responsible for any and all costs Incurred by the Plan in enforcing its rights, including but not limited to attorney's fees.

☐ That the Plan has a right to recover, through subrogation, reimbursement, offset or through any other available means the following:

☐ Any amount from the first dollar, that the Covered Person or any other person or organization on behalf of the Covered Person is entitled to receive as a result of the Accident, Illness, Injury or other medical condition, to the full extent of benefits paid or provided by the Plan; and

☐ Any overpayments made directly to providers on behalf of the Covered Person for the Accident, Illness, Injury or other medical condition.

☐ That the Plan's rights under this section shall be in first priority, to the full extent of any and all benefits paid or payable under the Plan, and will not be reduced due to the Covered Person's own negligence or due to the Covered Person not being made whole.

☐ That the Covered Person shall be solely responsible for all expenses of recovery from any Other Party, including but not limited to all attorney's fees and costs, which amounts will not reduce the amount of reimbursement payable to the Plan under the operation of any common fund doctrines.

☐ That the Plan will not pay any fees or costs associated with any claim or lawsuit without the Plan's express written consent in advance.

☐ That the Covered Person or their legal representative or Guardian, shall be considered a constructive trustee with respect to any Recovery received or that may be received from any Other Party in consideration of an Accident, Illness, Injury or other medical condition for which they have received benefits. Any such funds will be held in trust until the Plan's lien is satisfied." (Exhibit A)

10. In 2009, Hood sustained injuries in an automobile collision (the "Collision") for which a third party(s) was liable. Subsequently, Hood became the victim of medical negligence stemming from treatment relating to the Collision.

11. The Plan paid medical expenses of approximately $1,732,846.51 on behalf of Hood for treatment of the injuries he sustained as a result of the Collision and medical negligence.

12. The Plan paid the benefits referenced in the paragraph above and Hood accepted them under the condition that he reimburse the Plan, to the extent of benefits paid, from funds he obtained from liable third party(ies).

5

13. Plaintiff has been informed that pursuant to work performed by Goldberg for Hood, Hood obtained a judgment and/or settlement from the parties responsible for his injuries in an amount in excess of seven million dollars in 2017 ("lawsuit recovery").

14. Hood and/or Goldberg received funds from the tortfeasors and/or their insurers who injured Hood as trustees for the benefit of Plaintiff to the extent of Plaintiff's payments. They were on notice of Plaintiff's reimbursement interest and lien at all relevant times.

15. Plaintiff has made repeated demands to all Defendants for tender of the third party funds recovered to the extent of the Plan's payments for benefits in the amount of $1,732,846.51. Despite repeated demands, those Defendants have refused to reimburse the Plan out of the funds they have received for the injury claims of Hood.

16. Upon information and belief, Defendants may be in possession of the remaining settlement funds belonging to the Plaintiff.

## COUNT I

## CLAIMS FOR RELIEF UNDER ERISA § 502(a)(3)

17. Plaintiff re-states and re-allege paragraphs 1 – 16 of the Complaint as if fully set forth herein.

18. The Plaintiffs have a right to reimbursement for the $1,732,846.51 in medical benefits it paid on behalf of Hood.

19. Defendants have refused to reimburse the Plan, in violation of the terms of the Plan.

20. Defendants have been unjustly enriched by this refusal to reimburse the Plan for

6

the medical benefits it paid on Hood's behalf.

21. As a result of Defendants' violation of the terms of the Plan, the Plan has been harmed and Plaintiffs seek all appropriate equitable relief, pursuant to ERISA § 502(a)(3), to enforce the terms of the Plan, including, but not limited to:

(a) the imposition of a constructive trust and equitable lien in favor of the Plaintiff upon the settlement proceeds identified herein, plus accumulated interest;

(b) an accounting of all funds received by Hood and Goldberg stemming from the recoveries made for Hood on his injury claims and all records of transfer of such funds to any person or entity for any purpose;

(c) an equitable surcharge to be imposed on Defendants for failure to return the property due Plaintiff and any unjust enrichment accumulated to date for failure to return such property;

(c) a declaration of the Plan's ownership of the above-referenced settlement proceeds up to the full amount of payments made by the Plan for Kevin Hood's medical expenses and that such is a first priority right; and

(d) an injunction order directing Defendants to pay or turn over such settlement proceeds, plus accumulated interest and unjust enrichment to the Plan to the extent of its interest therein, and attorneys' fees incurred.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court enter a Judgment and Order in their favor including, but not limited to:

(a) the imposition of a constructive trust and/or equitable lien in favor of the Plaintiff upon the settlement proceeds identified herein, plus accumulated interest;

(b) an accounting of all funds received by Hood and Goldberg stemming from the recoveries made for Hood on his injury claims and all records of transfer of such funds to any person or entity for any purpose;

(c) an equitable surcharge to be imposed on Defendants for failure to return the property due Plaintiff and any unjust enrichment accumulated;

(d) a declaration of the Plaintiff's ownership of the above-referenced settlement proceeds up to the full amount of payments made by the Plan for Connie Marable's medical expenses and that such is first priority right; and

(e) an order directing Defendants to pay or turn over such settlement proceeds, plus accumulated interest, to the Plan to the extent of its interest therein.

(f) ordering Defendants to pay Plaintiffs' reasonable costs and attorney's fees incurred in connection with this action; and

(g) any other relief the Court deems just and equitable.

## COUNT II

(Tortious Interference with Contract)

22. Plaintiff incorporates by reference paragraphs 1-21 of this Complaint as if fully set forth here.

## JURISDICTION

23. This court has supplemental jurisdiction over all other claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy..." 28 U.S.C. § 1367. Significantly, "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Since Plaintiff's state law claim for tortious interference with contract against Goldberg arises from the same facts giving rise to the Plan's federal claims against Hood and Goldberg, supplemental jurisdiction rests in this

8

court.

24. As early as September 2011, Goldberg knew or should have known that Plaintiff had a contract with Hood for payment of medical expenses and that such contract required reimbursement to Plaintiff from any funds secured by Hood from third parties up to the amount Plaintiff paid for such injuries. At that time, Goldberg was aware that Plaintiff, through its agents, was asserting its claim for reimbursement on any funds Hood might recover from third parties including any lawsuit recovery. Such was an equitable lien on those third party funds.

25. Goldberg knew at the time of the settlement of the medical negligence claim in 2017 that Hood had a responsibility to honor the reimbursement terms set forth in the Plan from the lawsuit proceeds.

26. On information and belief, when the medical negligence claim settled for a figure in excess of $7,000,000.00, the settlement funds were deposited into an account controlled by Goldberg.

27. In 2017, Rule 1.15 of the Illinois Attorneys Rules of Professional Conduct at section (d) stated, "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." Section (e) of that rule stated, "(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

Comment 1 to that rule stated, "A lawyer should hold property of others with the care required of a professional fiduciary."

28. Despite knowing the foregoing, Goldberg intentionally and maliciously induced and/or advised Hood not to honor Plaintiff's equitable lien on the lawsuit proceeds and instead distributed the funds recovered in the lawsuit to Hood without first paying Plaintiff what it was due under the terms of the Plan in violation of the aforementioned ethics rule and established practice in the profession.

29. Hood then breached his contract with Plaintiff and has refused to reimburse the Plaintiff the funds due it from the lawsuit proceeds.

30. As a result of such actions, Plaintiff has been damaged in an amount of $1,732,846.51, plus loss of accrued interest and has been forced to incur attorney's fees and costs in order to pursue recovery of such funds.

WHEREFORE, Plaintiff seeks judgment against the Law Offices of Goldberg & Goldberg in an amount not less than $1,732,846.51, plus prejudgment interest and post judgment interest and reasonable attorney's fees and costs incurred in the pursuit of such judgment.

## COUNT III

(Conversion)

31. Plaintiff incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth here.

## **JURISDICTION**

32. This court has supplemental jurisdiction over all other claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or

controversy..." 28 U.S.C. § 1367. Significantly, "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Since Plaintiff's state law claims for conversion against Goldberg arise from the same facts giving rise to the Plan's federal claims against Hood and Goldberg, supplemental jurisdiction rests in this court.

33. Plaintiff had and has a right to the portion of the lawsuit recovery immediately upon its creation in an amount of $1,732,846.51 and such right was absolute and unconditional.

34. Plaintiff has made a demand to Goldberg for possession of such funds on multiple occasions.

35. Goldberg wrongfully and without authorization assumed control, dominion, or ownership over Plaintiff's property.

36. As a result of said wrongful conduct by Goldberg, Plaintiff has been damaged in an amount not less than $1,732,846.51.

WHEREFORE, Plaintiff seeks judgment against the Law Offices of Goldberg & Goldberg in an amount not less than $1,732,846.51, plus prejudgment interest and post judgment interest and reasonable attorney's fees and costs incurred in the pursuit of such judgment.

Respectfully submitted,

By: /s/ *Bradley M. Arnold*

Bradley M. Arnold
KOLB CLARE & ARNOLD PSC
1110 W. Lake Cook Road, #150
Buffalo Grove, IL 60089
(T) 630-550-5228
(F) 844-557-4329
ARDC# 6255567
barnold@kcalegal.com