**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GC AMERICA INC.,                )
                                  )
        Plaintiff,          )
                                  )     No. 20-cv-03045
      v.                     )
                                  )     Judge Andrea R. Wood
KEVIN HOOD, et al.,         )
                                  )
        Defendants.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff GC America Inc. ("GC America") is the sponsor and fiduciary of the GC America Inc. Group Benefit Plan ("Plan"). Defendant Kevin Hood was a Plan participant and beneficiary. When Hood was injured in a car accident, the Plan paid more than $1.7 million to cover his medical bills. With the assistance of attorneys at Defendant Law Offices Goldberg & Goldberg ("Goldberg"), however, Hood later obtained a settlement or judgment of more than $7 million from a lawsuit against the parties responsible for negligent medical treatment he received for his injuries. GC America has now filed suit against Hood and Goldberg under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), as well as Illinois state law, to recover the amounts it paid for his medical bills. Before the Court is Goldberg's motion to dismiss GC America's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19.) For the reasons stated below, the motion is granted.

## BACKGROUND

For purposes of Goldberg's motion to dismiss, the Court accepts all well-pleaded facts in GC America's complaint as true and views those facts in the light most favorable to GC America

as the nonmoving party. *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). The complaint alleges as follows.

GC America sponsors and serves as a fiduciary of the Plan, which provides health benefits to GC America employees and their eligible family members. (Compl. ¶¶ 4, 6, Dkt. No. 1.) Hood was a Plan participant and beneficiary at all times relevant to the complaint. (*Id.* ¶ 5.) In 2009, Hood was injured in an automobile collision. (*Id.* ¶ 10.) Over the course of his post-accident medical treatment, Hood was the victim of medical negligence. (*Id.*) As a result, the Plan paid $1,732,846.51 in medical expenses on Hood's behalf. (*Id.* ¶ 11.) GC America alleges that under the terms of the Plan, Hood was required to reimburse it for those medical expenses in the event he won any judgments or settlements from third parties compensating him for his deficient medical care. (*Id.* ¶¶ 9, 12.)

Goldberg represented Hood in a medical negligence case against the third parties responsible for his post-collision treatment. (*Id.* ¶ 13.) According to GC America, as a result of that litigation, Hood obtained a settlement or judgment of more than $7 million ("Award") in 2017. (*Id.*) When GC America requested that Hood and Goldberg use a portion of the Award to reimburse it for the amount of Hood's medical expenses covered by the Fund, they refused. (*Id.* ¶ 15.) Instead, Goldberg advised Hood not to honor the Plan terms. The Award funds were initially deposited in an account controlled by Goldberg and then distributed to Hood; GC America also alleges that Goldberg may be in possession of some of the funds (*Id.* ¶ 16, 27–28.) Either way, GC America was not repaid. Following Goldberg's advice, Hood has not reimbursed GC America. (*Id.* ¶ 29.)

In Count I of its complaint in this lawsuit, GC America seeks an injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), requiring Defendants to reimburse GC America for

$1,732,846.51 in medical bills that it paid on Hood's behalf. In Counts II and III, GC America asserts state-law claims against Goldberg for tortious interference with contract and conversion, respectively. Goldberg seeks dismissal of all claims against it.

## DISCUSSION

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not necessarily need to contain detailed factual allegations to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiff's well-pleaded factual allegations as true for purposes of a Rule 12(b)(6) motion, conclusory allegations will not be sufficient to stave off dismissal. *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Here, in support of its motion to dismiss, Goldberg first argues that GC America's ERISA claim fails because it has not pleaded facts sufficient to allege entitlement to equitable relief from Goldberg. Next, Goldberg contends that both state-law claims are barred by the applicable statute of limitations as well as Illinois's litigation privilege, which protects attorneys from liability for communications they make in the course of litigation. Lastly, Goldberg asserts that the complaint fails to state a valid claim for the tort of conversion because it does not adequately allege that GC America has an identifiable property right to any particular funds.

## I.     Equitable Relief Under ERISA (Count I)

Section 502(a)(3) of ERISA allows fiduciaries of an employee welfare benefit plan to bring a civil suit to enjoin acts or practices that violate ERISA or the terms of the relevant plan or to obtain other appropriate equitable relief. *See* 29 U.S.C. § 1132(a)(3). The Supreme Court has held that § 502(a)(3) provides only equitable relief, not legal relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 258 n.8 (1993)). Therefore, "whether a remedy is available under [§] 502(a)(3) 'depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought'; both must be equitable to proceed under [§] 502(a)(3)." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 453 (7th Cir. 2016) (quoting *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)).

GC America's § 502(a)(3) claim seeks relief in several forms, including a constructive trust and an equitable lien in its favor with respect to Hood's Award proceeds. In other words, GC America requests an injunctive order directing Defendants to turn over money. Although the claim is stated in equitable terms, "[a]lmost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages" because "they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West*, 534 U.S. at 210 (internal quotation marks and alterations omitted). "[M]oney damages are, of course, the classic form of ***legal*** relief." *Id.* (internal quotation marks omitted); *see also Cent. States*, 840 F.3d at 453 ("[S]imply phrasing the request for relief in equitable terms—*e.g.*, restitution, unjust enrichment, an equitable lien—is not dispositive."). Thus, a claim that seeks injunctive relief in the form of a money order "is properly regarded as equitable ***only*** if the plaintiff seeks the return of specifically identified funds that remain in the defendant's

possession or traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car)." *Cent. States*, 840 F.3d at 453 (internal quotation marks and alterations omitted).

By contrast, a plaintiff seeking "money damages from the beneficiary's general assets" is pursuing "a quintessentially **legal** remedy." *Id.* The Seventh Circuit in *Central States* affirmed dismissal of an ERISA plan's claim against health insurers to reimburse it for medical bills under § 502(a)(3), despite the fact that the plan had styled its claim in equitable terms. *Id.* at 449–50. The Seventh Circuit explained that although the defendant insurers may have realized some monetary benefit by avoiding their contractual duties to pay their insureds' medical bills, they did not have any specific, identifiable funds to which the plaintiff was entitled. *Id.* at 453–54. Instead, the plaintiff sought general compensatory damages—a legal remedy. *Id.* By contrast, in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356, 362–63 (2006), the Supreme Court found that a plaintiff properly sought equitable relief because it could point to specifically identifiable funds in the defendants' possession that had been set aside in separate investment accounts.

In the present case, GC America alleges that "[u]pon information and belief, Defendants may be in possession of the remaining settlement funds belonging to the Plaintiff." (Compl. ¶ 16.) Yet GC America provides no factual basis for this speculation, stating only that "Hood and/or Goldberg received funds from the tortfeasors." *(Id.* ¶ 14.) Moreover, within the complaint GC America contradicts its own assertion that Goldberg remains in control of some of the funds, explicitly alleging that Goldberg has already distributed the settlement funds to Hood. (*Id.* ¶ 28.) Put simply, there is no factual basis upon which the Court can reasonably infer that **Goldberg** has

possession of any of the settlement funds. But to sustain a claim for equitable relief GC America must be able to plead sufficiently that Goldberg retains the specific, identified funds at issue.[1]

GC America, however, asserts that because it seeks forms of relief beyond just a constructive trust or equitable lien, its claims must still survive. For instance, GC America seeks declaratory relief in the form of a declaration that it has a first priority right to the settlement proceeds up to the full amount of payments made for Hood's medical expenses. Yet without factual allegations indicating that Goldberg still possesses the specific funds, this claim must also be dismissed. After all, a "remedy is the means employed to enforce a right or redress an injury." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001) (quoting *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384 (1918)). A declaration of the Plan's ownership of the settlement proceeds as to Goldberg can do nothing to enforce GC America's right to the funds if Goldberg does not have possession of them. After all, as has been discussed, for any relief in the form of repayment to be equitable in nature (and thus permitted under § 502(a)(3)), GC America must be able to identify specific funds. Accordingly, without adequately pleading that Goldberg still has settlement funds within its possession, GC America cannot sustain a claim for declaratory relief against Goldberg.

---

[1] GC America filed a notice of additional authority on April 5, 2021 (Dkt. No. 36), directing the Court's attention to another case in this District, *Board of Trustees of the Health & Welfare Department of the Construction & General Laborers' District Council of Chicago & Vicinity v. Filichia*, No. 12-CV-04360, 2013 WL 329035 (N.D. Ill. Jan. 29, 2013). There, the court found that the attorney of a plan participant was the proper defendant of a fund's § 502(a)(3) claim for reimbursement. *Filichia*, 2013 WL 329035, at *3. But *Filichia* does not change this Court's analysis. The Court's analysis is not focused on whether Goldberg is an improper defendant under § 502(a)(3). Rather, the Court finds that, as pleaded, the complaint's allegations cannot sustain a claim for the equitable relief GC America seeks. While the district court in *Filichia* concluded briefly that the plaintiff was seeking equitable relief against the attorney-defendant, it did not discuss in-depth the question of what constitutes equitable versus legal relief. *See id.* The *Filichia* ruling was also issued before the Seventh Circuit's decision in *Central States*, which made clear that to obtain recovery under § 502(a)(3), the plaintiff must have an equitable claim and seek an equitable form of relief. 840 F.3d at 453.

Similarly, GC America's claim for an "accounting" does not seek a proper form of relief. A plaintiff may seek an "accounting," best described as "an adjustment of the accounts of the parties and a rendering of judgment for the balance ascertained to be due," as an equitable remedy. *Gas Tech. Inst. v. Rehmat*, 524 F. Supp. 2d 1058, 1073 (N.D. Ill. 2007) (internal quotation marks omitted). But that is not what GC America seeks in its complaint—rather, GC America requests a literal accounting (as in, a review of any records related to the settlement funds and a calculation as to their amounts). In other words, GC America does not actually assert a claim for the equitable remedy of accounting.

Finally, GC America contends that it is entitled to relief in the form of an equitable surcharge. Courts have recognized that an equitable surcharge may be an appropriate remedy available to a beneficiary when there has been a breach of ERISA fiduciary duty. *See, e.g.*, *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 877–83 (7th Cir. 2013) (explaining how an ERISA fiduciary could be surcharged in an action brought pursuant to 29 U.S.C. § 1132(a)(3) action by a beneficiary); *McBean v. United of Omaha Life Ins. Co.*, No. 18cv166-MMA (JLB), 2019 WL 1508456, at *7 (S.D. Cal. Apr. 5, 2019) (describing how, under § 1132(a)(3), a beneficiary can receive relief by way of an equitable surcharge for breach of fiduciary duties by an ERISA trustee). But in those cases, the equitable surcharge sought to redress a breach of fiduciary duty by a fiduciary *of the Plan*. Goldberg, however, was never such a fiduciary. Contrary to GC America's assertion, the mere fact that Goldberg may have received and handled settlement funds, a portion of which was owed to GC America, does not confer upon it a fiduciary duty as to the Plan. *See McCotter v. Longo*, No. 95 C 5985, 1997 WL 158325, at *5 (N.D. Ill. Mar. 31, 1997) ("[A]n attorney does not become a fiduciary under ERISA by mere receipt of settlement funds on behalf of a plan beneficiary."); *see also Health Cost Controls v. Bode*, No. 93 C 3447, 1994 WL

53783, at *4 (N.D. Ill. Feb. 18, 1994) (holding that "imposing upon a plan beneficiary's lawyer the status of fiduciary to an ERISA plan is not warranted by the statutory definition of fiduciary and is untenable as a practical matter" and granting summary judgment in favor a defendant, an attorney who had disbursed settlement funds to his client without first satisfying the fund's lien for reimbursement). Consequently, equitable surcharge is not an appropriate form of relief as to Goldberg.

In sum, because GC America has either not pleaded facts sufficient to support its claim for relief or, as is the case with claims for accounting and an equitable surcharge, it seeks relief which cannot be granted under § 502(a)(3), Goldberg's motion to dismiss Count I is granted.

## II. State-Law Tort Claims

Goldberg also argues that the Court should dismiss GC America's state-law claims against it for tortious interference with contract and conversion based on Illinois's absolute litigation privilege and the applicable statute of limitations. Alternatively, Goldberg argues that GC America has failed to state a claim for conversion.[2]

### A. Statute of Limitations

The Court turns first to the statute of limitations argument. Under Illinois law, claims against attorneys arising out of the performance of their professional duties are subject to a two-year statute of limitations. 735 ILCS 5/13-214.3(b). The limitations period begins to run "from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." *Id.* Goldberg contends that GC America's state-law claims arose sometime

---

[2] Although the Court has dismissed the federal law claims against Goldberg, federal claims remain pending against Hood. The Court therefore retains supplemental jurisdiction over the remaining state-law claims against Goldberg. *See Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *11 (N.D. Ill. Mar. 24, 2020) (explaining how, when federal claims against a co-defendant remain, a district court properly retains supplemental jurisdiction when only state-law claims remain as against the other defendant).

in 2017—when Hood obtained his Award from the parties responsible for his negligent medical treatment. According to Goldberg, GC America was therefore required to bring this suit sometime in 2019. Yet GC America did not file its complaint until May 21, 2020.

Dismissing claims "as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Dismissal based on untimeliness is only "appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674–75. "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point [the Court] may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Here, dismissal of GC America's state-law claims at the pleading stage based on untimeliness would be premature. First, it is not clear from the face of the complaint that the relevant statutory limitations period expired in 2019. While the complaint indicates that Hood obtained his Award in 2017, it does not include any facts from which the Court can reasonably infer the date on which GC America knew or should have known through reasonable diligence that Hood had obtained the Award. *See Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (reversing dismissal based on statute of limitations because the complaint was silent as to the date when the plaintiff discovered the alleged violation). GC America might also defeat the statute of limitations defense if, for instance, it could show that Defendants discouraged it from filing suit by making promises that repayment was forthcoming. *See Easterling v. Thurmer*, 880 F.3d 319, 323–24 (7th Cir. 2018) (explaining that equitable principles could apply "if the

defendant takes active steps to prevent the plaintiff from suing in time" (internal quotation marks and alterations omitted)). Because it would be premature to dismiss GC America's tort claims on statute of limitations grounds, the Court proceeds to the merits of the claims.

### B. Tortious Interference with Contract (Count II)

With Count II, GC America contends that Goldberg intentionally interfered with the contract between GC America and Hood. Specifically, GC America claims that the Plan constituted a contract requiring Hood to reimburse GC America for his medical expenses if he achieved a monetary settlement that compensated him for those expenses. To state a claim for tortious interference with contract under Illinois law, "a plaintiff must allege facts sufficient to establish: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018) (citing *HIP Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)).

Goldberg argues that GC America's claim for tortious interference with contract is barred by the litigation privilege under Illinois law. Litigation privilege is an affirmative defense. *Semmerling v. Bormann*, No. 18 CV 6640, 2019 WL 10375623, at *1 (N.D. Ill. Sept. 11, 2019) (citing *O'Donnell v. Field Enters., Inc.*, 491 N.E.2d 1212, 1219 (Ill. App. Ct. 1986)). As discussed above, a motion to dismiss based on an affirmative defense should only be granted when the plaintiff pleads itself out of court by alleging all facts required to establish the defense. *Cancer Found.*, 559 F.3d at 674–75. Illinois's litigation privilege is grounded in the public policy principle that "[a]n attorney must be at liberty to candidly and zealously represent his client in communications to potential opposing parties in litigation or other proceedings without the specter

of civil liability for his statements clouding his efforts." *Atkinson v. Affronti*, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006). "In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). "The only requirement for the application of the attorney litigation privilege is that the communication must pertain to proposed or pending litigation." *Scarpelli v. McDermott Will & Emery LLP*, 117 N.E.3d 238, 246 (Ill. App. Ct. 2018). The privilege applies to communications made before and during litigation (including out-of-court communications between attorney and client or prospective client) as well as attorneys' "conduct performed within the practice of law." *Id.* at 248.

It appears that no Illinois court has yet weighed in on whether the absolute litigation privilege applies to claims for tortious interference with contract. Originally, Illinois's absolute litigation privilege served only to protect attorneys from tort claims for defamation or false light. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 708 (N.D. Ill. 2006) (citing *Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 430 (Ill. App. Ct. 1998)). However, Illinois courts have noted that as their "jurisprudence has developed and as the methods of legal representation have modernized, the attorney litigation privilege has also progressed." *Scarpelli*, 117 N.E.3d at 246. Accordingly, Illinois courts have extended the absolute litigation privilege to apply to other kinds of tort claims against attorneys. *See, e.g.*, *id.* at 245–49 (finding that the absolute litigation privilege barred the plaintiffs' intrusion upon seclusion claim against an attorney); *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1009 (Ill. App. Ct. 2015) (finding that the privilege barred the plaintiff's claims for intentional infliction of emotional distress and strict liability for ultrahazardous activity); *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56–57 (Ill. App. Ct. 2014) (finding that the privilege barred claims for negligent infliction of emotional

11

distress and breach of contract). Goldberg now asks the Court to extend this privilege yet again to cover the claims pending against it.

To support its claim that the Court should recognize an extension of the absolute litigation privilege, Goldberg points to older caselaw suggesting that Illinois courts would at least recognize a qualified litigation privilege in an intentional interference case. *See Schott v. Glover*, 440 N.E.2d 376, 379–80 (Ill. App. Ct. 1982); *see also Vill. of Lake Barrington v. Hogan*, 649 N.E.2d 1366, 1374 (Ill. App. Ct. 1995). But these cases do not actually address the application of a litigation privilege—instead, they stand for the proposition that that the presence or absence of a privilege is a fundamental aspect of the "unjustified" element of an interference with contract claim. *See Hogan*, 649 N.E.2d at 1374 ("Where the conduct of the defendant appears to be privileged from the face of the plaintiff's complaint, the plaintiff is required to plead and prove that the defendant's actions were done without justification.").

For instance, in *Schott v. Glover*, the court found dismissal of an intentional interference claim appropriate because the plaintiff failed to plead that the defendant's interference was unjustified, an essential element of the claim. *Schott*, 440 N.E.2d at 379; *see also Webb*, 906 F.3d at 577 (listing the third element of a tortious interference claim as the "***unjustified*** inducement of a breach of the contract" (emphasis added)). The court explained that because the underlying purpose of the interference with contract cause of action is to protect "against forms of interference which, on balance, the law finds repugnant," the question of whether such interference is justified depends on whether it is privileged or meritorious in any way. *Schott*, 440 N.E.2d at 379; *see also Hogan*, 649 N.E.2d at 1374 ("It is well settled that Illinois courts will recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's

12

contractual rights."). In other words, "unjustified" means that the defendant had the "desire to harm, which is independent and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest." *Hogan*, 649 N.E.2d at 1374. In *Schott*, the complaint made clear that the alleged interference arose in the form of advice between an attorney and client. 440 N.E.2d at 379–80. Because there were no facts in the complaint from which the court could infer that the advice was unjustified or based on malice, the court affirmed dismissal. *Id.*

Here, GC America fails to allege facts which could support a crucial element of its claim—that Goldberg's interference was unjustified. Instead, GC America states only that "Goldberg intentionally and maliciously induced and/or advised Hood not to honor Plaintiff's equitable lien on the lawsuit proceeds." (Compl. ¶ 28.) But this assertion that Goldberg acted maliciously is conclusory and therefore, adds nothing to GC America's claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 ("To properly state a cause of action for intentional interference with contractual rights . . . the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified."). GC America has not set forth any other facts from which the Court can reasonably infer that Goldberg advised Hood with the desire to harm GC America or for any reason unrelated to zealous legal advocacy.

Because GC America's complaint fails to present facts sufficient to allege that Goldberg's interference with its contract was unjustified, the Court need not address the question of whether the absolute litigation privilege applies to bar the claims entirely. Accordingly, as GC America has failed to state a claim for tortious interference with contract, Goldberg's motion to dismiss is granted with respect to Count II.

### C. Conversion (Count III)

Finally, the Court considers whether GC America has successfully stated a claim for conversion against Goldberg. As an initial matter, Goldberg contends that Illinois's litigation privilege bars GC America's conversion claim. But Goldberg has not cited any authority to demonstrate that Illinois courts have applied that privilege to the tort of conversion or to suggest that they would consider doing so. But as with the claim for intentional interference with contract, the Court need not resolve the issue because GC America's complaint fails to plead the claim adequately.

The tort of conversion descends from an ancient common law action "against the finder of lost goods who refused to return them." *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96 (Ill. App. Ct. 1990). The basis of the tort was historically the "interference with possession of a chattel, or with the right to immediate possession." *Id.*; *see also Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. App. Ct. 2004) ("The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." (internal quotation marks omitted)). Under Illinois common law, a plaintiff stating a claim for conversion must allege that (1) it has a right to a certain piece of property; (2) its right is absolute, unconditional, and entitles it to immediate possession; (3) it made a demand for possession of the property; and (4) "the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (internal quotation marks omitted).

Under Illinois law, "the subject of conversion is required to be an identifiable object of property." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). "Money may be the subject of conversion, but it must be capable of being described as a specific chattel." *Id.* "It must be shown

that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *Id.* at 1261. In addition, "a plaintiff must show that he had a right to a specific fund or specific money in coin or bills." *Horbach v. Kaczmarek*, 288 F.3d 969, 975 (7th Cir. 2002) (internal quotation marks omitted). For instance, in *Cruthis*, an Illinois court found that the evidence supported a cause of action for conversion where the defendant wrongfully withdrew money directly from the plaintiffs' bank account. 822 N.E.2d at 464.

Goldberg argues that GC America has failed to allege that it has an immediate, absolute, and unconditional right to the money it seeks. The Court agrees. While GC America may have a contractual right to a specific amount of money, it has not identified that the money at issue at all times belonged to it and that Goldberg converted it. *See Horbach*, 288 F.3d at 975. The complaint does not suggest that from the moment Hood obtained the Award, certain funds making up part of the Award already legally belonged to GC America. Rather, GC America alleges that Hood (and by extension, Goldberg) had an obligation to apply a portion of Hood's Award funds to reimburse GC America. As stated, these facts merely allege "an obligation to pay money, which cannot serve as the foundation for a conversion claim." *Sharp v. Bank of Am., N.A.*, No. 19 C 5223, 2020 WL 1543544, at *7 (N.D. Ill. Mar. 31, 2020) (dismissing the conversion claim because it was premised on the defendant's obligation to repay a legitimate debt, not the defendant's wrongful taking of the funds at issue); *Song v. PIL, LLC*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (dismissing a conversion claim arising out of royalties that the defendant was contractually obligated to pay the plaintiff—*i.e.*, a "breach of contract claim improperly dressed as a conversion claim"). Thus, GC America has failed to allege a plausible claim for conversion against Goldberg and its motion is granted with respect to Count III.

## CONCLUSION

For the foregoing reasons, Goldberg's motion to dismiss (Dkt. No. 19) is granted and the claims against Goldberg are dismissed. As the Court cannot conclude that it would be futile for GC America to amend the complaint in an effort to remedy the deficiencies discussed in this opinion, the dismissal is without prejudice to GC America filing an amended complaint as to Goldberg.

ENTERED:

Dated:  March 29, 2022

Andrea R. Wood
United States District Judge