**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GC AMERICA INC.,             )
                                      )
         Plaintiff,         )
                                      )     No. 20-cv-03045
      v.                     )
                                      )     Judge Andrea R. Wood
KEVIN HOOD, et al.,         )
                                      )
         Defendants.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Kevin Hood allegedly received a settlement or judgment of at least $7 million through a medical negligence suit in which he was represented by Defendant Law Offices of Goldberg & Goldberg ("Goldberg"). Plaintiff GC America, Inc. ("GC America"), the sponsor and fiduciary of the GC America Inc. Group Benefit Plan ("Plan"), has sued Hood, a Plan participant and beneficiary, and Goldberg under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), to recover the amounts the Plan paid for Hood's medical bills. GC America Inc. has filed its First Amended Complaint ("FAC") following the Court's dismissal of the claims against Goldberg in the original complaint for failure to state a claim upon which relief could be granted.  Now before the Court are Goldberg's motion to dismiss GC America's claims against it in the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 69) and GC America's motion for default judgment against Hood (Dkt. No. 55). For the following reasons, Goldberg's motion is granted in part and denied in part and GC America's motion is denied.

## BACKGROUND

### I.    Facts

The following facts are taken from GC America's amended complaint and, for purposes of Goldberg's motion to dismiss, accepted as true and viewed in the light most favorable to GC America as the nonmoving party. *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

GC America sponsors and serves as a fiduciary of the Plan, which provides health benefits to GC America employees and their eligible spouses and dependents. (First Am. Compl. ¶¶ 4, 6, Dkt. No. 67.) At all times relevant to this action, Hood was a Plan participant and beneficiary. (*Id.* ¶ 5.) In 2009, Hood was injured in an automobile collision. (*Id.* ¶ 12.) Over the course of his post-accident medical treatment, Hood was the victim of medical negligence. (*Id.*) As a result, the Plan paid $1,732,846.51 in medical expenses on Hood's behalf. (*Id.* ¶ 13.) Under the terms of the Plan, Hood was required to reimburse the Plan for those medical expenses in the event he won any judgments or settlements from third parties compensating him for his deficient medical care. (*Id.* ¶¶ 9, 12.) The Plan's terms also stated that the Plan would have a first priority lien on any recovery received from third parties and the Plan's beneficiary or their legal representative would be considered a constructive trustee for any such recovery. (*Id.* ¶ 9.)

Goldberg represented Hood in a medical negligence suit against the third parties responsible for his post-collision treatment. (*Id.* ¶ 5.) As a result of that litigation, Hood obtained a settlement or judgment of more than $7 million ("Award") in 2017. (*Id.* ¶ 15.) When GC America demanded that Hood and Goldberg use a portion of the Award to reimburse the Plan for medical expenses it paid on Hood's behalf, they refused. (*Id.* ¶ 23.) GC America alleges that Goldberg continues to possess at least one-third of the Award funds, *i.e.*, approximately $2.3 million, and

Hood continues to possess the remainder. (*Id.* ¶ 22.) Consequently, GC America has filed the present lawsuit.

## II.        Procedural Posture

GC America's FAC asserts a claim against Hood and Goldberg pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking several forms of equitable relief, including (1) a declaration that the Plan has a first priority right to the settlement proceeds up to the amount of payments made for Hood's medical expenses; and (2) an injunction requiring Defendants to reimburse the Plan for $1,732,846.51 in medical bills that it paid for Hood's treatment. The Court previously dismissed GC America's original complaint as to Goldberg, including its ERISA claim under § 502(a)(3) and state-law claims for tortious interference with contract and conversion, for failure to state a claim. (Dkt. No. 65.) Now that GC America has filed its FAC, Goldberg again seeks dismissal of GC America's ERISA claim with prejudice.[1]

Hood, meanwhile, was duly served with the original complaint on July 16, 2020. (Dkt. No. 22-1.) After he failed to timely answer or respond to the complaint, the Court entered default against Hood on September 3, 2020. (Dkt. No. 24.) Subsequently, Hood appeared in the case and filed a motion asking the Court to vacate the entry of default and grant a continuance so that he could obtain legal representation. (Dkt. No. 31.) The Court granted Hood's motion, vacated the default entered against him, and extended his time to respond to the complaint. (Dkt. No. 33.) But after Hood failed to answer GC America's complaint by the extended deadline and did not appear for several status hearings, the Court ordered Hood to show cause in writing why he should not be found in default again. (Dkt. No. 39.)

---

[1] GC America has not re-alleged in the FAC its previous claims for tortious interference with contract and conversion.

Following Hood's failure to answer or otherwise respond to the complaint, or to comply with the Court's show cause order, the Court again entered default against him on July 13, 2021. (Dkt. No. 40.) After the Court's entry of default, on April 19, 2022, GC America filed the FAC. As to Hood, the FAC contains substantively the same allegations as the original complaint, except that GC America no longer asserts state-law claims against Hood and now definitively alleges that Hood continues to possess a portion of the settlement funds. (*See* First Am. Compl. ¶ 22.) On February 24, 2022, GC America filed the present motion for a default judgment against Hood in the amount of $1,732,846.51, along with a declaration that GC America has a first and top priority lien and constructive trust on the Award proceeds. The Court directed Hood to respond to GC America's motion for default judgment by May 4, 2022. (Dkt No. 68.) He failed to do so, nor has he answered or otherwise responded to GC America's original complaint or amended complaint.

## DISCUSSION

### I.     Goldberg's Motion to Dismiss

The Court first addresses Goldberg's motion to dismiss the FAC. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not necessarily need to contain detailed factual allegations to meet this pleading standard. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### A.      Pleading Standard

As a threshold matter, in addition to the notice-pleading standard under Federal Rule of
Civil Procedure 8, Goldberg argues that the FAC should be subject to Federal Rule of Civil
Procedure 9(b)'s heightened pleading requirement for allegations of fraud and mistake.[2]
Specifically, Goldberg contends that Rule 9(b) applies because GC America's claim for equitable
relief under ERISA is premised on Goldberg's alleged breach of fiduciary duty, conversion of
settlement funds, and unjust enrichment.

Rule 9(b) requires a complaint alleging fraud or mistake to "state with particularity the
circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement
means that the complaint must allege the "who, what, when, where, and how of the fraud."
*Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation
omitted). The purpose of the particularity requirement is "to discourage a sue first, ask questions
later," strategy, especially considering the reputational harm that can accompany fraud
allegations. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (internal
quotation marks omitted). Whether Rule 9(b) applies depends on a complaint's factual
allegations, since the rule encompasses more than just claims that are fraudulent torts by
definition but also includes claims that "sound[] in fraud." *See Borsellino v. Goldman Sachs Grp.,
Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). A claim "sounds in fraud" if it is predicated on a course
of fraudulent conduct. *Id.* (citation omitted); *see also Cornielsen*, 916 F.3d at 594, 604 (subjecting
the plaintiffs' breach of fiduciary claim to Rule 9(b) because the claim was premised on

---

[2] The Court notes that Goldberg, in its previous motion to dismiss the original complaint, did not claim
that Rule 9(b)'s heightened pleading standard applied to GC America's ERISA claim.

allegations that defendants knowingly misled plaintiffs to induce them to convert their loans to the company into equity).

Goldberg cites several cases from this District for the proposition that Rule 9(b) applies to claims of breach of fiduciary duty, conversion, and unjust enrichment, and claims under ERISA. *See, e.g.*, *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 917 (N.D. Ill. 2018); *Schaufenbuel v. InvestForClosures Fin., LLC*, No. 09 C 1221, 2009 WL 3188222 (N.D. Ill. Sept. 30, 2009); *In Re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004). But in those cases, the underlying factual allegations asserted that the defendants had engaged in fraudulent schemes or misrepresentations. For instance, in *Desmond*, the court found that underlying the plaintiff's breach of fiduciary duty and conversion claims against a company's officers were allegations of the defendants' scheme to siphon money out of the company's assets to evade creditors. 344 F. Supp. 3d at 924. Similarly, in *In Re Sears Roebuck*, the court determined that Rule 9(b) applied to an ERISA claim because the plaintiffs alleged that their employer and plan sponsor misrepresented the company's profitability in prospectuses and SEC financial statements, which resulted in financial losses to the plaintiffs when the company's stock price dropped. 2004 WL 407007, at *1–2, *6.

By contrast, GC America's ERISA claim in this case is not premised on allegations of fraudulent conduct by Hood or Goldberg. While GC America alleges that Defendants converted the Award proceeds and Goldberg breached its fiduciary duty to the Plan, GC America does not allege that Hood and Goldberg engaged in any misrepresentations or attempted to deceive GC America in some manner. Allegations that a party wrongfully possessed funds or failed to distribute funds does not automatically amount to fraudulent conduct. *Cf. Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 851 (N.D. Ill. 2012) ("Not all breaches of fiduciary duty are based

on fraudulent conduct."). Therefore, the Court finds that the heightened standard of Rule 9(b) does not apply. GC America must only meet Rule 8(a)'s "less stringent pleading standard," in which "[a] complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

### B. Equitable Relief Under ERISA

#### 1. Constructive Trust, Equitable Lien, and Injunction

Goldberg asserts that GC America's ERISA claim fails because it has not pleaded facts sufficient to allege entitlement to any form of equitable relief from Goldberg. More specifically, Goldberg argues that GC America has failed to cure the pleading defect in the original complaint: GC America failed to plausibly allege that Goldberg had the specific, identified settlement funds in its possession.

Section 502(a)(3) of ERISA allows fiduciaries of an employee welfare benefit plan to bring a civil suit to enjoin acts or practices that violate ERISA or the terms of the relevant plan or to obtain other appropriate equitable relief. *See* 29 U.S.C. § 1132(a)(3). Nonplan defendants, such as Goldberg and Hood, may be subject to suit under this section. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 916 (7th Cir. 2013) (citing *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 254 (2000)). But the Supreme Court has held that § 502(a)(3) provides only equitable relief, not legal relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 258 n.8 (1993)). Therefore, "whether a remedy is available under [§] 502(a)(3) 'depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought'; both must be equitable to proceed under [§] 502(a)(3)." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l*

*Grp., Inc.*, 840 F.3d 448, 453 (7th Cir. 2016) (quoting *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)).

Here, the Court finds that GC America plausibly alleges that the basis for its ERISA claim is equitable. The Supreme Court has concluded that an ERISA suit by a plan to enforce an equitable lien by agreement, such as a beneficiary's agreement with a plan to convey settlement proceeds from a third party, has an equitable basis. *See Montanile*, 577 U.S. at 142–44 (citation omitted). An equitable lien by agreement is an "equitable lien created by an agreement to convey a particular fund to another party." *Id.* at 143 (citation omitted). Such a claim is equitable because a plan relies on a traditional rule of equity to collect the settlement proceeds: "the rule that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 143–44 (internal quotation marks omitted).

Here, GC America asserts that the Plan's terms created an equitable lien by agreement on Hood's settlement. (First Am. Compl. ¶¶ 9, 11, 17–18.) For instance, the Plan's terms state that the Plan has a "first priority lien and right of recovery" on any recovery received from a third party and the beneficiary becomes a constructive trustee with respect to such recovery. (*Id.* ¶ 9.) Thus, GC America sufficiently alleges that the basis of its claim is equitable because the Plan's terms indicate that GC America had an equitable lien by agreement that attached to Hood's Award proceeds when he acquired title to the Award.

The Court next considers whether the nature of the underlying remedies GC America seeks is equitable. GC America's § 502(a)(3) claim seeks relief in several forms, including a constructive trust and an equitable lien in its favor with respect to the Award proceeds. GC America essentially requests an injunctive order directing Defendants to turn over money. In dismissing the original complaint's ERISA claim against Goldberg, the Court found that GC

America had alleged no factual basis for its speculation that Goldberg and Hood might be in possession of the remaining settlement funds belonging to GC America. The Court further noted that GC America contradicted its assertion that Goldberg possessed some of the settlement funds by also alleging that Goldberg distributed the settlement funds to Hood. In the original complaint, GC America asserted that "[u]pon information and belief, Defendants may be in possession of the remaining settlement funds belonging to the Plaintiff." (Compl. ¶ 16.) Now, in its FAC, GC America alleges that "[u]pon information and belief, Goldberg retained and continues to possess at least one-third of the Recovery funds obtained by judgment/settlement of Hood's injury claim taken as a fee for obtaining recovery amounting to a figure in excess of $2.3 million." (First Am. Compl. ¶ 22.)

Regardless of whether a party fashions a claim in equitable terms, "[a]lmost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages" because "they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West*, 534 U.S. at 210 (internal quotation marks and alterations omitted). "[M]oney damages are, of course, the classic form of ***legal*** relief." *Id.* (internal quotation marks omitted); *see also Cent. States*, 840 F.3d at 453 ("[S]imply phrasing the request for relief in equitable terms—*e.g.*, restitution, unjust enrichment, an equitable lien—is not dispositive."). Therefore, a claim that seeks injunctive relief in the form of a money order "is properly regarded as equitable ***only*** if the plaintiff seeks the return of specifically identified funds that remain in the defendant's possession or traceable items that the defendant purchased with the funds." *Cent. States*, 840 F.3d at 453 (internal quotation marks and alterations omitted).

By contrast, a plaintiff seeking "money damages from the beneficiary's general assets" is pursuing "a quintessentially *legal* remedy." *Id.* The Seventh Circuit in *Central States* affirmed the dismissal of an ERISA plan's claim against health insurers to reimburse it for medical bills under § 502(a)(3), even though the plan had styled its claim in equitable terms. *Id.* at 449–50. The Seventh Circuit explained that although the defendant insurers may have realized some monetary benefit by avoiding their contractual duties to pay their insureds' medical bills, they did not have any specific, identifiable funds to which the plaintiff was entitled. *Id.* at 453–54. Instead, the plaintiff sought general compensatory damages—a legal remedy. *Id.* Conversely, in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356, 362–63 (2006), the Supreme Court found that a plaintiff properly sought equitable relief because it could point to specifically identifiable funds in the defendants' possession that had been set aside in separate investment accounts.

Construing the facts in the light most favorable to GC America, the Court concludes that GC America has pleaded sufficiently that Goldberg retains the specific, identified settlement funds. Accordingly, the nature of the underlying remedies sought is equitable. Unlike in the original complaint, GC America now asserts that Goldberg has a portion of the settlement funds in its possession that it kept as a fee, rather than its prior speculation that Goldberg might be in possession of some of the funds. (*Compare* First Am. Compl. ¶ 22, with Compl. ¶ 16.) GC America also identifies the specific amount it believes Goldberg still possesses—at least one-third of the Award proceeds. (*See* First Am. Compl. ¶ 22.)

Goldberg argues that GC America fails plausibly to allege that Goldberg continues to possess some of the settlement funds because it does not provide a factual basis for its claim. But "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on information and belief should be liberally viewed." *Brown v. Budz*, 398

F.3d 904, 914 (7th Cir. 2005) (internal quotation marks omitted). "The Seventh Circuit has long allowed plaintiffs to stand on allegations made on 'information and belief' when the information is accessible only by defendants." *Flores v. United Airlines*, No. 18 C 6571, 2021 WL 843415, at *5 (N.D. Ill. Mar. 5, 2021) (collecting cases); *see also Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016) (permitting pleading based on information and belief where the information necessary to prove or refute the plaintiff's allegation that the defendants authored the defamatory comment was only available to the defendants); *Atos, LLC v. Allstate Ins. Co.*, No. 20-CV-06224, 2021 WL 6063963, at *13 (N.D. Ill. Dec. 22, 2021) ("[C]ourts recognize that 'on merits issues, information and belief allegations are perfectly fine in appropriate circumstances, where the basis for the contention is not something properly within plaintiff's personal knowledge.'"). In contrast, pleadings based on information and belief generally cannot satisfy Rule 9(b)'s particularity requirement unless (1) the plaintiff does not have access to the facts constituting the fraud; and (2) the plaintiff provides the grounds for their suspicions. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (internal quotation marks and citation omitted). But here, as discussed above, Rule 9(b)'s particularity requirement does not apply. Consequently, GC America may rely on information and belief to support its allegation that GC America possesses at least one-third of the Award proceeds.[3]

---

[3] Moreover, the Court views GC America's pleading on information and belief liberally because whether Goldberg still possesses the settlement funds, the precise amount it possesses, and the specific accounts where the funds are held are matters exclusively within Goldberg's knowledge. *Cf. Schiavone v. Prudential Insurance Co. of America*, No. 16-CV-09848, 2017 WL 1493721, at *6 (N.D. Ill. Apr. 26, 2017) (concluding that the nature of the plaintiff's desired recovery was equitable under § 502(a)(3), where the plaintiff alleged on information and belief that the defendant was in possession of the entire amount of the overpayment of disability benefits). Goldberg nonetheless may seek sanctions under Federal Rule of Civil Procedure 11 if it is determined that GC America's factual allegations were known by GC America's counsel to be without any factual basis. *See Huon*, 841 F.3d at 743.

### 2.    Declaratory Judgment

Additionally, GC seeks a declaration that it has a first priority right to the settlement proceeds up to the full amount of payments advanced for Hood's medical expenses. Courts have found that an ERISA suit by a plan fiduciary seeking declaratory relief may be an appropriate equitable remedy under the statute. *Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 607 (7th Cir. 2022) (citing *Spitz v. Tepfer*, 171 F.3d 443, 450 (7th Cir. 1999)). Nonetheless, in dismissing the original complaint, the Court determined that declaratory relief was inappropriate because GC America failed to identify specific funds in Goldberg's possession. As a result, a declaration of the Plan's ownership of the settlement proceeds as to Goldberg could do nothing to enforce GC America's right to the proceeds if Goldberg did not still possess the funds. But because GC America now plausibly alleges in the FAC that Goldberg still retains some of the Award proceeds, the Court finds that GC America has also sufficiently alleged that it is entitled to declaratory relief against Goldberg under § 502(a)(3).

### 3.    Equitable Surcharge

Finally, GC America contends that it is entitled to equitable relief in the form of an equitable surcharge.

Relevant here, a "surcharge" is an equitable remedy to "make the beneficiary whole for any losses caused by the [fiduciary's] breach of [trust]." *Divane v. Nw. Univ.*, 953 F.3d 980, 994 (7th Cir. 2020) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 440–43 (2011)), *vacated* on other grounds *sub nom. Hughes v. Nw. Univ.*, 142 S. Ct. 737 (2022). Specifically, a surcharge is "a traditional equitable remedy in the form of monetary compensation for losses caused by a trustee's breach of duty." *Iron Workers St. Louis Dist. Council Pension Fund v. Zenith Am. Sols., Inc.*, No.

13 C 7867, 2014 WL 3563295, at *1 (N.D. Ill. July 17, 2014) (citing *CIGNA Corp*., 563 U.S. at 441–42).

In dismissing the original complaint, the Court concluded that an equitable surcharge was not an appropriate form of relief as to Goldberg because it was not a fiduciary of the Plan. The Court noted that other courts have recognized that an equitable surcharge may be an appropriate remedy available to a beneficiary when there has been a breach of an ERISA fiduciary duty. *See, e.g.*, *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 877–83 (7th Cir. 2013) (explaining how an ERISA fiduciary could be surcharged in an action brought pursuant to a § 1132(a)(3) action by a plan beneficiary); *McBean v. United of Omaha Life Ins. Co.*, No. 18-cv-166-MMA (JLB), 2019 WL 1508456, at *7 (S.D. Cal. Apr. 5, 2019) (describing how, under § 1132(a)(3), a beneficiary can seek an equitable surcharge for breach of fiduciary duties by an ERISA trustee). But the Court further found that, in those cases, equitable surcharge sought to redress a breach of fiduciary duty by a fiduciary *of the Plan*. Goldberg, however, was never such a fiduciary according to GC America's allegations.

The statutory definition of a plan fiduciary includes a person who exercises any discretionary authority or control over the management of the Plan, management or disposition of Plan assets, or administration of the Plan. 29 U.S.C. § 1002(21)(A). Assuming Goldberg received and handled settlement funds, a portion of which was owed to GC America, that does not confer upon it a fiduciary duty with respect to the Plan. *See Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993) (finding that settlement proceeds from a plan beneficiary's tort claim were not plan assets but funds to which the plan had a contractual claim for reimbursement); *McCotter v. Longo*, No. 95 C 5985, 1997 WL 158325, at *5 (N.D. Ill. Mar. 31, 1997) ("[A]n attorney does not become a fiduciary under ERISA by mere receipt of settlement funds on behalf of a plan

beneficiary."); *see also Health Cost Controls v. Bode*, No. 93 C 3447, 1994 WL 53783, at *4 (N.D. Ill. Feb. 18, 1994) (holding that "imposing upon a plan beneficiary's lawyer the status of fiduciary to an ERISA plan is not warranted by the statutory definition" and granting summary judgment in favor an attorney who had disbursed settlement funds to his client without first satisfying the fund's lien for reimbursement).

Turning to the FAC, GC America now contends that it is not asserting that Goldberg is a Plan fiduciary according to the statutory definition in § 1002(21)(A). Rather, GC America argues that Goldberg owed a duty to the Plan akin to a fiduciary duty. For this claim, it relies on Rule 1.15 of the Illinois Rules of Professional Conduct and *Western States Insurance Co. v. Louis E. Olivero & Associates*, 670 N.E.2d 333 (Ill. App. Ct. 1996), for the proposition that state law imposes a fiduciary obligation on Illinois attorneys to distribute or preserve property for a lienholder when the attorney takes possession of property that is subject to a lien or claim by a third party. In *Western States*, the state appellate court held that a law firm was liable for conversion for failing to satisfy an insurer's subrogation claim out of its client's settlement proceeds; the court also found that the law firm had an affirmative duty to disburse the insurer's share of the settlement funds under Rule 1.15. *Western States*, 670 N.E.2d at 334–36. However, *Western States* is inapposite for several reasons: (1) the plaintiff insurer was a named payee on the settlement checks because the clients had executed a release providing that they would satisfy the insurer's claim; (2) the clients and law firm explicitly promised to pay the insurer its share of the settlement funds once the checks cleared; and (3) the plaintiff's claim was under state law and not ERISA.

More importantly, GC America identifies no authority for the proposition that an equitable surcharge is appropriate equitable relief against a defendant who is not a fiduciary of the Plan

under ERISA's statutory definition, but a fiduciary under state law. The Seventh Circuit has "consistently refused to create federal common law remedies or implied causes of action under ERISA." *Bauwens v. Revcon Tech. Grp., Inc.,* 935 F.3d 534, 538 (7th Cir. 2019) (citations omitted). Considering the Seventh Circuit's strict approach for interpreting remedies and causes of action under ERISA, the Court declines to conclude that Goldberg should be considered a fiduciary of the Plan. Consequently, equitable surcharge is not an appropriate form of relief as to Goldberg.

In sum, GC America has pleaded facts sufficient to support its claim for equitable relief under ERISA in the form of a constructive trust or equitable lien in its favor, injunctive relief, and declaratory relief. However, GC America is not entitled to an equitable surcharge against Goldberg under § 502(a)(3). Accordingly, Goldberg's motion to dismiss the FAC is denied for GC America's claims for a constructive trust or equitable lien, injunctive relief, and declaratory relief under ERISA, but it is granted for GC America's claim for an equitable surcharge under ERISA.

## II.     GC America's Motion for Default Judgment Against Hood

The Court next considers GC America's motion for default judgment against Hood. GC America requests that the Court find Hood liable for $1,732,846.51 and declare that GC America has a first and top priority lien and constructive trust on the Award proceeds.

Federal Rule of Civil Procedure 55(a) allows default to be entered against a party who has failed to plead or otherwise defend in an action. Fed. R. Civ. P. 55(a). As a result of an entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co*., 811 F.3d 247, 255 (7th Cir. 2016) (citation omitted). In this case, Hood has failed to answer or otherwise respond to the original complaint since it was

filed in 2020. As a result, the Court entered default against him on July 13, 2021. Since then, however, GC America has filed an amended complaint.

Numerous district courts have held that an entry of default against a defaulting defendant as to a plaintiff's original complaint was moot or that the entry of default should be vacated if the plaintiff filed an amended complaint after the court's entry of default. *See, e.g.*, *Peters Broad. Eng'g v. 24 Capitol LLC.*, No. 1:22-CV-236, 2023 WL 2388695, at *1 (N.D. Ind. Feb. 17, 2023) (denying plaintiff's motion for default judgment where plaintiff did not seek a new entry of default after it filed an amended complaint); *Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 53 (D.D.C. 2022) ("When an amended complaint becomes operative, a default entered as to the prior complaint is generally deemed mooted."); *Anselme v. Griffin*, No. 3:20-CV-00005, 2021 WL 2152512, at *3 (W.D. Va. May 26, 2021) ("[D]istrict courts in other circuits routinely have vacated or set aside 'as moot' a defendant's default on a prior, superseded complaint once the plaintiff's amended complaint is the operative pleading in the case—even if the plaintiff simply repleaded her claims against that defendant.); *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, No. 13CV1395-GPC BLM, 2014 WL 6810663, at *4–5 (S.D. Cal. Dec. 2, 2014) (determining that the defaulting defendant did not need to be served with the amended complaint but vacating the prior entry of default); *Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187, 2014 WL 860019, at *8 (E.D.N.Y. Mar. 5, 2014) (noting that "several courts have found that once the original complaint is superseded, a clerk's entry of default on that pleading is mooted"); *see also Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999) ("[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward."). *But see DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 CIV. 5378, 2012 WL 4561127, at *6 (S.D.N.Y. Sept. 27, 2012) (concluding that the court had jurisdiction to enter default judgment against the

defendant as to the amended complaint because the defendant was already in default when the plaintiff filed the amended complaint, and the amended complaint added no new claims against the defendant).

Here, the Court entered default against Hood as to the original complaint in July 2021 before GC America filed the FAC in April 2022, but GC America has not moved for a new entry of default as to the FAC since then. Accordingly, in light of the case law discussed above, the Court directs GC America to show cause in writing why the Court should not vacate its prior entry of default and require GC America to serve Hood with the FAC. GC America's motion for default judgment is thus denied due to the Court's concern about whether its entry of default can still stand in light of the amended complaint.

Even without the questionable validity of the prior entry of default, the Court would still deny GC America's motion for default judgment as to Hood as premature. In cases where defendants are joint and severally liable, it is proper to enter default judgment as to fewer than all defendants with respect to liability. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1324 (7th Cir. 1983); *see Sack v. Seid*, No. 01 C 6474, 2002 WL 31409573, at *1 (N.D. Ill. Oct. 24, 2002) ("[W]hen different results as to different parties are not logically contradictory or inconsistent, such as in the case of joint and several liability, default judgment against non-answering defendants is appropriate." (citing *Marshall & Isley Tr. Co. v. Pate*, 819 F.2d 806, 812 (7th Cir.1987))). Yet "in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments." *Marshall & Isley Tr. Co*, 819 F.2d at 811. Such circumstances are cases of joint liability or when there is a "single *res* in controversy." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980). Here, the Award proceeds—totaling at least $7 million—are the single *res* in controversy. GC America alleges that Goldberg

and Hood each continue to possess a portion of the Award proceeds. (First Am. Compl. ¶ 22.) In its motion for default judgment, GC America also requests that the Court declare that GC America has a first and top priority lien and constructive trust on the Award proceeds. Goldberg, however, is still actively contesting whether the portion of the Award proceeds allegedly distributed to it should be subject to a lien or constructive trust. Therefore, at this juncture, the Court finds it inappropriate to grant GC America's motion because of the risk of inconsistent judgments related to the Award proceeds.

## CONCLUSION

For the foregoing reasons, Goldberg's motion to dismiss (Dkt. No. 69) is granted in part and denied in part. As the Court concludes that it would be futile for GC America to amend the complaint to remedy the deficiency in the equitable surcharge claim, that dismissal is with prejudice as to Goldberg. GC America's motion for default judgment against Hood (Dkt. No. 55) is denied without prejudice. GC America is further directed to show cause in writing why the Court should not vacate its prior entry of default and require GC America to serve Hood with the First Amended Complaint.

ENTERED:

Dated:  September 27, 2023

Andrea R. Wood
United States District Judge

18